1  ALETHEA O'TOOLE
2  1308 E Colorado Blvd., #516
3  Pasadena, CA 91106
   Phone Number: (213)656-5254
4  Email Address: a.otoole@live.com
5  Plaintiff In Pro Se

```
FILED
CLERK, U.S. DISTRICT COURT
12/19/24
CENTRAL DISTRICT OF CALIFORNIA
BY_____MRV_____DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM
```

6

7                    UNITED STATES DISTRICT COURT
8                    CENTRAL DISTRICT OF CALIFORNIA

9

10  NAME OF PLAINTIFF,                    ) Case No.:
11                                        )     2:24-cv-11079-UA
    Alethea C. O'Toole and Hunter J. O'Toole  )
12                                        )
13            Plaintiff(s),               )
14                                        ) COMPLAINT FOR RELIEF,
        vs.                               ) REMEDIES, AND
15                                        ) DAMAGES CAUSED BY
16  NAME OF DEFENDANT(s),                 ) COPYRIGHT©
17  Nickelodeon Animation Studio et al/National  ) INFRINGEMENT, AND
    Amusements/Paramount Global/          ) ADDITIONAL CAUSES OF
18  ViacomCBS/Nickelodeon Group, Shari E.  ) ACTION
19  Redstone, Robert M. Bakish, Chris M. Savino,  )
    Jenna Boyd, British Film Institute, Netflix et al,  )
20  Chrysalis, Variety Magazine et al, TajMania  )
21  Entertainment et al, Larry Juris, Howard Gimple,  )
    Rebecca "Becky" Gimple, Sam Laskey,   )
22  Emanuel "Manny" Reyes, Tom Caggiano,  ) **JURY TRIAL DEMANDED**
23  Darryl Scott Haynes, Tureka Tara Turk-Haynes,  ) **- YES: X**
    Luz "Lucy" M Magaña, Guillermo Argueta,
24  Carlos Velasco, Sgt. Rebecca Gomez
25  (Individual), Sgt. Jeffery Whitney (Individual),
26  Chief Eugene Harris (Individual) and 500+ does
27            Defendant(s)
28

## JURISDICTION

1)    This court has jurisdiction over 28 U.S.C. § 1331 (Federal Question) and the Constitutional laws contained in the Copyright Act of 1976, the Lanham's Act, the Sherman Act, and U.S. Code - Unannotated Title 28, U.S.C.A. § 1338(a) which provides the court with exclusive and original jurisdiction of any civil action arising under any Act of Congress, or asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws. In addition Title 17 of the Copyright Act, 17 U.S.C.A. §§101 et seq., provide the court jurisdiction over federal question that arise pursuant, but not limited to, the following copyright codes of action: 17 U.S. Code § 501 Infringement of copyright; 17 U.S. Code § 506 criminal offenses by willful copyright; 17 U.S. Code § 201 Ownership of copyright, 17 U.S. Code § 204 Execution of transfers of copyright ownership, 17 U.S. Code § 511 liability of States, instrumentalities of States, and State officials for infringement of copyright, 17 U.S. Code § 602 Infringing importation or exportation, 17 U.S. Code § 603 Importation prohibitions: Enforcement and disposition of excluded articles, the illegal use of copyright notices outlined in 17 U.S. Code § 401 and 17 U.S. Code § 404, and 17 U.S. Code § 107 Fair use.

2) The court has jurisdiction over Title 18 codes; Section 2319 (relating to criminal infringement of a copyright), 18 U.S.C. §§ 1961-68, specifically section 1961(10)

Racketeer Influenced and Corrupt Organizations Act (RICO) of 1970, 18 U.S.C. § 2319 (2022) Criminal infringement of a copyright, 18 U.S. Code §2318 Trafficking of counterfeit labels, illicit labels, or counterfeit documentation or packaging, 18 U.S. Code §2319C Illicit digital transmission services, 18 U.S. Code §2323 Forfeiture, destruction, and restitution.

3)   Jurisdiction in this Court is proper pursuant to 28 U.S.C.A. § 1391 Defendants or their agents are subject to personal jurisdiction in this jurisdiction, a substantial part of the events or omissions giving rise to the claim occurred in this jurisdiction including but not limited to contracting for goods and services with the state, and a substantial part of Plaintiff's copyright property that is the subject of the action is situated in this jurisdiction and pursuant to a forum selection clauses contained in contracts consented to by Defendants.

4)   Defendants are subject to personal jurisdiction in the forum: (1) pursuant to CPLR § 302(a)(1) as Defendants transact business within California by contracting, purchasing or otherwise providing financial relief for the creation and development of the subject written, and visual work(s) in California; (2) pursuant to CPLR § 302(a) harm to Plaintiff's property within California; (3) pursuant to CPLR § 302(a)(3), as Defendants committed a tortious act without the State causing harm to Plaintiff's property with California and Defendants regularly engage in business within California and should reasonably expect the act to have

consequences in the State by reason of the Defendants' act of contracting and

contractual language contained in the agreements and payment schedules between

the Parties their agents, and third parties used to further develop the works in

question.

5)   This court has supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367 over the

breach of contract claims because the claims are so related to the claims in the

action within the Court's original jurisdiction, they form part of the same case or

controversy under Article III of the United States Constitution.

6)   Federal jurisdiction is proper to govern over international treaties related to

copyright laws where harm and controversy over the material and merits at hand

occurred in relation to internal laws under; The International Copyright Act of

1891 26 Stat. 1106, Digital Millennium Copyright Act of 1998, World Intellectual

Property Organization Copyright Treaty, FCC International laws Berne

Convention, North American Free Trade Agreement, General Agreement on

Tariffs and Trade 1948, and the Agreement on Trade-Related Aspects of

Intellectual Property Rights outlined by the World Trade Organization.

7)   The Court is authorized to provide declaratory and injunctive relief pursuant to 28

U.S.C. §§ 2201 and 2202 and has authority over 28 U.S.C.A. § 1332 - Diversity of

citizenship; amount in controversy, since the parties hereto are citizens of different states and the amount in controversy exceeds $75,000

## VENUE

1)  Venue over this action in California is proper in this District pursuant to 28 U.S.C. §1391 U.S. Code Unannotated Title 28 which establishes general venue over judiciary and judicial procedure in an action in any judicial district in the United States. Venue is additionally appropriate in this District pursuant to 5 U.S.C. § 703 because the regulatory decisions sought to be reviewed will likely adversely affect State Statutes including but not limited to: California Statute 344-45, New York Statute 349-50, Colorado 345-46, Texas 350-51, 325-33 as well as statues in Michigan, Georgia, North Carolina, Hawaii, and other states not named herein.

2)  Moreover matters related to and involving acts of racketeering gives proper venue and process to the Court for charges outlined in 18 U.S. Code § 1965 (a), 18 U.S. Code § 1965 (b), 18 U.S. Code § 1965 (c), and 18 U.S. Code § 1965 (d) -84 Stat. 944.

> **(a)**Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

**(b)**In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

**(c)**In any civil or criminal action or proceeding instituted by the United States under this chapter in the district court of the United States for any judicial district, subpoenas issued by such court to compel the attendance of witnesses may be served in any other judicial district, except that in any civil action or proceeding no such subpoena shall be issued for service upon any individual who resides in another district at a place more than one hundred miles from the place at which such court is held without approval given by a judge of such court upon a showing of good cause.

**(d)**All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

3) However, the Plaintiff would like the court to consider Federal Multidistrict Litigation under statute 28 U.S.C. §1407(a) for proceedings in the complaint herein sighted and brought to the court, by the PLAINTIFFS, Ms. Alethea O'Toole and Hunter J. O'Toole, individuals, in light of the following factors:

4) The infringed property is being streamed and televised in all 50 states, and across over 20 international countries. This far-reaching arm of the infringed property applies to multiple districts, within multiple states, in multiple municipalities with various copyright code concerns under question of various federal and FCC laws which have effected, affected and been affected by such actions and decisions made by the Defendants listed herein the complaint.

5) The sale of Paramount Global, ViacomCSB, and Nickelodeon are currently pending the finalization of the merger between National Amusements, Inc. and Skydance Media. National Amusements is an American privately owned mass media holding company incorporated in Maryland and based in Norwood, Massachusetts at 846 University Ave Norwood, MA, 02062-2631. The company is currently the majority holder of Paramount Global, ViacomCBS, and thus Nickelodeon. Shari Redstone is sole owner of National Amusements and profits from the merger of the companies. She will receive a $500 Million dollar parachute upon exiting among other financial gains. Other recent bidders have included Edgar Bronfman. A formal announcement was made on July 7th, 2024, between National Amusements, Paramount, and Skydance Media:

PRESS RELEASE DETAILS

SKYDANCE MEDIA AND PARAMOUNT GLOBAL SIGN

DEFINITIVE AGREEMENT TO ADVANCE PARAMOUNT AS A

WORLD-CLASS MEDIA AND TECHNOLOGY ENTERPRISE


July 7, 2024


Ellison Family and RedBird Capital Partners to Invest Over $8 Billion in

New Paramount and to Acquire National Amusements, Inc.


Paramount Class A Stockholders to Receive $23 Per Share in Cash/Stock

Election, Class B Stockholders to Receive $15 Per Share in Cash/Stock

Election; Cash Consideration Available to Public Shareholders Totals

$4.5 Billion

"LOS ANGELES and NEW YORK, July 07, 2024 (GLOBE

NEWSWIRE) -- Skydance Media ("Skydance") and Paramount Global

(NASDAQ: PARA, PARAA) ("Paramount") today announced that they

have entered into a definitive agreement to form "New Paramount" – a

next-generation media and technology leader, through a two-step

transaction including the acquisition of National Amusements, Inc.

("NAI"), which holds the controlling share stake in Paramount, and subsequently a merger of Skydance and Paramount Global.

Board Approval

On January 2, 2024, the Board of Directors of Paramount formed a Special Committee of independent directors to evaluate strategic alternatives, including third party proposals. The Special Committee reviewed, negotiated, unanimously approved and recommended the Skydance transaction for approval by the Board. Following formal approval by the Board, the Transaction Agreement was signed.

Investor Call Details

Skydance and Paramount will host a call to discuss the transaction with securities analysts on Monday, July 8, 2024, at 8:30 a.m… Presentation materials for the call will be available prior to the call at approximately 8:15 a.m. ET and located under "Events and Presentations" in the "Investors" section on the Paramount website.

Advisors

RedBird Advisors, BofA Securities, Inc., Moelis & Company LLC and The Raine Group serve as financial advisors to Skydance and the Investor Group. Latham & Watkins LLP serves as legal counsel to Skydance and the Investor Group. Sullivan & Cromwell LLP serves as legal counsel to RedBird Capital Partners. BDT & MSD Partners serves as financial advisor to National Amusements, Inc. and Ropes & Gray LLP serves as legal counsel. Centerview Partners LLC serves as financial advisor to the Paramount Special Committee and Cravath, Swaine & Moore LLP serves as legal counsel. Rothschild & Co serves as financial advisor to Paramount Global and Simpson Thacher & Bartlett LLP serves as legal counsel."

6) DEFENDANT Corporation Paramount Global d.b.a. Nickelodeon Group is headquartered at 1515 Broadway New York, NY 10003. It is likely that litigants will call on witnesses from multiple states.

7) DEFENDANT Howard Gimple, incorporated a company in New York State, in the year 2017, one year after the first infringement took place. Howard Gimple initially lived in New York state which is the address associated with his corporation "Howard Gimple Inc.".

8) On or around May 15th, 2023, DEFENDANTS Darryl Scott Haynes and Lucy M. Magaña sent the PLAINTIFF a handwritten letter by USPS to her Downtown Los Angeles apartment. The letter stated that Mr. Haynes had swayed and/or bribed a California Superior Court Judge and an Officer of the Court from deciding against him in a restraining order case that the PLAINTIFF, Ms. O'Toole filed on behalf of her and her son in 2023, for claims of stalking, threats, harassment, verbal abuse, revenge porn, and making multiple libel statements, and other heinous acts. The requested order included $5.9 million in emotional damages. Ms. O'Toole refiled the restraining order with another judge, but the matter was continued after Mr. and Mrs. Haynes evaded the Sheriff's service and traveled to London by air on May 30th, 2023, the morning of the trailing court date. That order is currently on appeal. Following is a copy of the letter and the accompanying envelope.

Heard you took Scott to court and lost, heard you produced 1000's of pages and Scott brought none and you still lost. You corny bitch! Recently saw Scott at the Disney Little Mermaid Screening. I took some screenshots from Scott's phone and You're pussy looks so beat-up I plan to share them with folks and at Disney and other Studios. By next week, you will be famous!!

You were a stupid skank cum dump when we worked together and you st still are. Most people we worked with thought you were a dumb bitch! You are poor white trash and no man would keep you for anything other than to shoot cum into. Why Scott cares about you makes him a dumbass. But now I know where you live, I will be sure to post your pictures around dtla. You are a tired old slut - look at your self st still wearing to same old clothes (from the court pictures I saw) Also Scott knew the lodge and court officer - He plays softball with them - You dumb bitch.

You will always be a bottom bitch. All you are good for is catching cum in your mouth, ass and that fucked-up/beat-up looking pussy.

Fuck you and your dead kid (sure you don't even know who the father was)

Fuck you and Scott

Love Lucy



9) On October 2nd, 2024, the PLAINTIFF found reason to believe that her files had
been tampered with and that she was missing evidence from her personal files
saved in her Microsoft Outlook "Cloud." The PLAINTIFF then discovered that
access to her files had become available to both patrons and employees of a non-
profit organization, called Chrysalis in Los Angeles, California, located at 522
Main St, Los Angeles, CA 90013, on the same block as the PLAINTIFF'S
apartment where she received the letter. Furthermore, the business is sponsored by
Netflix, Walt Disney Resorts, NBC Universal and possibly others, with direct
relation to the case at hand. The organization has been in business for 40 years and
utilizes "professionals" within the industry as volunteers to lead their mandatory
training courses. Besides having influence in theater, television and film, their
influence in California is far reaching.  (https://www.changelives.org/our-partners/)

10)   Below are screenshots from the company provided by their senior leadership
showing that they had access, and may still have access, to the PLAINTIFF'S files.
The PLAINTIFF had been using Chrysalis's computer lab from March 2024-
August 2024 to compile evidence and work on the pleadings for this court case, in
addition to looking for work. After these findings the PLAINTIFF discovered that
the evidence she had gathered has been removed from its original source, and that
the websites had suddenly been changed.

10/12/24, 4:01 PM                                                    Gmail - Client Services

M Gmail                                                              Alethea O'Toole <aletheacielle@gmail.com>

**Client Services**

**Nicole Huezo** <Nicole.Huezo@changelives.org>                     Fri, Oct 4, 2024 at 1:24 PM
To: "aletheacielle@gmail.com" <aletheacielle@gmail.com>
Cc: Mark Cohen <Mark.Cohen@changelives.org>

Good afternoon Alethea,

I hope this message finds you well. I reached out to our IT team to see if they could assist with your One Drive account. It looks like you may have not logged out of your account the last time you accessed it in our computer lab. Our IT team has logged you out, so there shouldn't be additional files uploaded moving forward.

As a reminder, it is clients' responsibility to log out of personal accounts that are accessed on Chrysalis computers. I have attached photos that show your account was initially still logged in, and has now been officially closed by IT.

Please let us know if you have additional questions. Thank you.

Best,

**Nicole** Martin Huezo

Sr. Director of Client Services, Downtown

CHRYSALIS I a nonprofit organization **Changing Lives Through Jobs**

Direct: (213) 995-6945

*She I Her I Hers*

ChangeLives.org

*40 years of Success Bells ringing!*

COMPLAINT FOR RELIEF, REMEDIES, AND DAMAGES CAUSED BY COPYRIGHT© INFRINGEMENT, AND
ADDITIONAL CAUSES OF ACTION



11)    Being that there is no email, name, or other information typed in the email

address line of this OneDrive "Setup" page, the PLAINTIFF is unable to clearly

determine who still has access to her private emails, photos, and files. Further

emails to determine if she was still logged into other computers at the Chrysalis

computer lab and to ensure that they no longer have access have been ignored.

Thus, the PLAINTIFF is concerned that spoilage has occurred and will continue to

occur.



12)    The PLAINTIFF found record that DEFENDANT Darryl "Scott" Haynes has

two businesses established under his name. The first, called "The Beach Ltd," was

established under Scott Haynes. "The Beach Ltd" claims to be incorporated and

conducting regular business abroad from the Island of Jersey, in the Channel

Islands at the following location: 10-12 Commercial Bldg.,

13)    The company claims to offer branding and publishing services and has publicly

posted the company website as copyrighted. According to the website the company

has been in existence since 2017 when it established business ties to Standard

Charter Bank and Accurd Jersey Triathlon. The company also shows EY as a

partnering client, which it shares in common with Chrysalis. The files that are

missing from the PLAINTIFF'S personal drive were all related to "The Beach

Ltd." Although the PLAINTIFF lost copies of pertinent information about the

company such as the contact email, the company's phone number and printouts of

the company's website pages, she had compiled the information into presentations

for the court while using the Chrysalis computer lab and is able to present her

findings to the court today. For these reasons and reasons stated herein the

PLAINTIFF believes that spoilage has occurred. The following documents show

the relation between Mr. Haynes and The Beach Ltd.







https://www.zoominfo.com/c/the-beach-ltd/430340356

14)     Below are screenshots of The Beach Ltd. website taken on January 11th, 2023.

The contact information is listed as Scott Haynes.



(https://www.thebeach.je/)





15)    Below is a screenshot of The Beach Ltd. website taken October 3rd, 2024.



16)  Following is the printed version of The Beach Ltd website pages, printed on or

about January 11th, 2023.



17)  Below is the printed version of the entire website for The Beach Ltd. printed on

or about October 3rd, 2024.



18)    The next three images are screenshots of the files that were deleted from the

PLAINTIFF'S private drive. The first screenshot shows files #2-#6 are still present

but file #1 "The Beach Ltd." is missing. The next screen shot was taken February

2023 when the PLAINTIFF created the files and includes file #1 "The Beach Ltd."

The third image is a list of the documents inside the file that is missing.





19)    Between December 2022 and January 2023, the PLAINTIFF discovered a

second company registered to Darry Scott Haynes in New York City, New York.

The site described itself as a "Worldwide Adult Entertainment and Sex Tourism

site." On June 5th, 2024, while gathering evidence together at the Chrysalis facility

the PLAINTIFF was able to locate the website registered to D. Scott Haynes. After

the PLAINTIFF'S interactions with Chrysalis, she returned to the site registered at

Syn Cham Tourism Service (https://wsh-tour-travel.net/) to find that it too had been

completely revamped. Below are two images taken of the website prior to any

changes being made. The screenshot includes the date and time it was taken. The

second image shows the web address. The third image is the new site that was

updated sometime between June 5th, 2024, and November 27th, 2024. The

PLAINTIFF believes that this supports her claim of spoilage.





20)    The PLAINTIFF is presenting findings of a business certificate registered to

Syn Cham Tourism/Syn Cham Jewelry and completed by aka W. Scott Haynes.

The certificate was posted on a company link and lists 323 S. 10th Ave, Mount

1    Vernon, New York 10550 as the address associated with Syn Cham Jewelry. A

2    second address for the company was listed on a shipping label posted by someone

3    at the company. This address matches one of the four addresses associated with

4    Syn Cham Tourism Services at 600 Mamaroneck Ave., Suite 400, Harrison, New

5    York 10528. The picture includes a dozen loose jeweled stones sent by USPS

6    establishing the address for the business.

  

21)    The business certificate also offers a handwriting sample that the PLAINTIFF

claims to match the handwriting in the letter sent to her Los Angeles apartment in

2023 by DEFENDANTS D. "Scott" Haynes and "Lucy" M. Magańa.

# PARTIES

22)   **Plaintiff Alethea C. O'Toole**: Upon information and belief, that at all times hereinafter mentioned, the Plaintiff, Alethea C. O'Toole (herein "PLAINTIFF") is an individual with her principal place of residency at 1308 E Colorado Blvd. #516, Pasadena, CA 91106 and is authorized to license, sell, distribute, develop or otherwise use written and visual works created by Plaintiff.

23)   Upon information and belief, Plaintiff is the copyright registrant for the written and illustrated works in question.

24)   She is the mother of PLAINTIFF Hunter J. O'Toole. In 2007 she received a double degree from the University of Hawaii, in Business Administration and Theatre Arts. She was a collegial student who earned a scholarship and graduated with top marks. In 2006 she was accepted into New York University's Tisch School for the Arts, where she completed a summer program in film and commercial studies. Prior to moving to California she interned at a radio station, was a DJ at the UHH campus radio station, was on the college newspaper as a photojournalist, took children's linguistics, art, theater, music, dance, marketing, finance, business, and worked in the costume shop at the UH Hilo Performing Arts Center.